IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | § § § | PLAINTIFF |
| v. | § § | Civil Action No. 1:10cv567-LG-RHW |
| ERIC DAHLHAUSER | § § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [42] filed by De Lage Landen Financial Services, Inc., on July 1, 2011. Eric Dahlhauser has filed a response in opposition to the Motion, and De Lage has filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that De Lage is entitled to a judgment as a matter of law against Eric Dahlhauser in the amount of $3,004,271.51, plus eighteen percent interest from the November 24, 2010 date of default.

FACTS

Cedar Lake Oncology Center, LLC, provides outpatient radiation therapy to patients suffering from cancer. Initially, the only member of Cedar Lake was Laurence Lines, M.D. (Ex. 3 to Def.'s Resp.) On September 9, 2008, Cedar Lake, entered into a Master Lease Agreement with De Lage in which De Lage agreed to lease certain medical equipment pursuant to subsequent Master Lease Schedules. (Ex. 9 to Pl.'s Mot.) On September 15, 2008, Investment Insight, LLC, acquired a one-third interest in Cedar Lake. (Ex. 3 to Def.'s Resp.) Dahlhauser was the only member of Investment

Insight. (*Id.*) Dahlhauser signed a Blanket Personal Guaranty that provides:

> In order to induce De Lage Landen Financial Services, Inc. ("Lessor") to enter into a certain Master Lease Agreement dated as of September 9, 2008 and any and all Lease Schedules with Cedar Lake Oncology Center, LLC ("Lessee") thereto now existing or hereafter executed, whether or not Guarantor will have received actual notice thereof, . . . Guarantor hereby unconditionally guarantees to Lessor and its successors and assigns (I) the due and punctual payment to Lessor when due of all rent obligations and all other amounts coming due under the Lease, including, without limitation, all indemnification payments, whether as a result of acceleration, maturity or otherwise, (II) the full, prompt and unconditional performance of every obligation to be performed by Lessee under the Lease, and (III) all expenses of obtaining or endeavoring to obtain payment or performance thereof or security therefor, or of enforcing this Guaranty, including attorneys' fees and other legal expenses. If more than one person executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

(Ex. 5 to Pl.'s Mot. at 1).

Dr. Lines and Biloxi Radiation Oncology Center, LLC, also signed guaranty agreements in favor of De Lage. (Ex. 3 to Def.'s Resp.) Cedar Lake then entered into Master Lease Schedules with De Lage for the following equipment: aVarian Clinac IX, a GE Lightspeed RT 4 Slice CT, a vault door, and an AGJ system. (Ex. 9 to Pl.'s Mot.)

Dahlhauser later "caused Investment Insight, LLC to resign from its membership in Cedar Lake." (Ex. 3 to Pl.'s Resp.) Dahlhauser claims that he also asked Dr. Lines to discharge him from the Blanket Personal Guaranty, but Dr. Lines failed to do so.

Cedar Lake failed to make its scheduled payments under the Lease Agreement, and De Lage provided notice of the default to Cedar Lake and the guarantors on December 2, 2010. (Ex. 8 to Compl.) De Lage filed this lawsuit against Cedar Lake,

Dr. Lines, Biloxi Radiation, and Dahlhauser on December 15, 2010, and it sought a writ of replevin. De Lage's Motion for Writ of Replevin was granted on January 10, 2010, but execution was stayed until February 9, 2011. On May 9, 2011, De Lage, Cedar Lake, Biloxi Radiation, and Dr. Lines entered into a Consent Decree [39] that set forth a payment schedule for the past due amount. The Consent Decree provided that if payments were not timely made, a judgment could be entered against Cedar Lake, Biloxi Radiation, and Dr. Lines.

Therefore, when Cedar Lake, Biloxi Radiation, and Dr. Lines failed to make all of the payments that were required by the Consent Decree, the Court entered a Judgment [41] against Cedar Lake, Biloxi Radiation, Lines, and De Lage. The Judgment ordered that De Lage should recover $3,262,062.70 from them. It also ordered them to surrender the leased equipment to De Lage by May 31, 2011. Dahlhauser was not a party to the Consent Decree or the Judgment, but he did not object to the entry of these documents.

On July 1, 2011, De Lage filed this Motion for Summary Judgment as to its claims against Dahlhauser, the only remaining defendant. In support of that Motion, De Lage submitted an affidavit signed by its Litigation and Bankruptcy Specialist, Cheryl Glick, claiming that the balance due on the Lease Agreements as of June 30, 2011, was $3,004,271.51, plus eighteen percent interest from the November 24, 2010 date of default, not including attorney's fees. Dahlhauser has filed a response to the Motion, arguing that the guaranty he signed was unconscionable, or in the alternative it is unenforceable, because the Consent Decree signed by the other parties to this

lawsuit constituted a novation of the Lease Agreement and Equipment Schedules. He also asserts that the amount of damages suffered by De Lage is speculative, since the Court has authorized the repossession of the equipment and the former defendants have recently made payments to De Lage. Furthermore, Dahlhauser has requested additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d). That request was denied by United States Magistrate Judge Robert H. Walker in an Order [52] entered on August 24, 2011.

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### A. Novation

The parties agree that Pennsylvania law applies in this case pursuant to the

Blanket Personal Guaranty signed by Dahlhauser. (Ex. 5 to Pl.'s Mot. at §8.3). A novation extinguishes all rights and duties under an earlier agreement. *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486 (Pa. Super. Ct. 1984). "The doctrine of novation, or substituted contract, applies where: (i) a prior contract has been displaced, (ii) a new valid contract has been substituted in its place, (iii) there exists sufficient legal consideration for the new contract, and (iv) the parties consented to the extinction of the old and replacement of the new." *First Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 138 (Pa. Super. Ct. 1997). The question of whether a contract constitutes a novation depends upon the parties' intent, and the party asserting a novation has the burden of proving that the parties had a "meeting of the minds." *Haviland Grille*, 704 A.2d at 138-39. The parties' intent may be demonstrated by other writings, by words, or by conduct. *Carson*, 478 A.2d at 487.

Dahlhauser claims that the Consent Decree entered by the other parties constitutes a novation of the Master Lease Agreement and Equipment Schedules, and he requests additional discovery so that the intent of the parties in the event of a novation can be determined. The Consent Decree provides, "All other terms and conditions set forth in the Lease Agreements other than those specifically modified herein shall remain in full force and effect." (Consent Decree [39] at 6, ¶28). The term "Lease Agreements" as it is used in the Consent Decree encompasses the Master Lease Agreement and Equipment Schedules 01, 02, and 03. (*Id.* at 2, ¶6). The Consent Decree mentions Dahlhauser's Blanket Personal Guaranty, and it was incorporated as

part of the Consent Decree as Exhibit 5. (*Id.* at 2, ¶7). Furthermore, the Consent Decree states, "Consent Decree Defendants acknowledge and reaffirm their obligations due under the Lease Agreements and guarantees." (*Id.* at 5, ¶22). Moreover, the Blanket Personal Guaranty signed by Dahlhauser provides:

> Lessor may, without notice to Guarantor, deal with the Lessee in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Lessee such extensions of time to perform any act or acts as may seem advisable to Lessor at any time and from time to time without terminating, affecting or impairing the validity of the obligation hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Lease shall in any way alter or affect the obligations of Guarantor hereunder.

(Ex. 5 to Pl.'s Mot. at §4).

The Court finds that Dahlhauser cannot demonstrate that the Consent Decree Defendants and De Lage mutually intended to replace the Lease Agreements with the Consent Decree, because the Consent Decree states that the Consent Decree Defendants acknowledge and reaffirm their obligations due under the Lease Agreements. In addition, the Guaranty signed by Dahlhauser specifically permits De Lage to alter or extend the obligations set forth in the Lease Agreement without affecting its ability to enforce Dahlhauser's Guaranty. Therefore, the Consent Decree and subsequent Judgment based on the Consent Decree do not constitute a novation. In addition, time to conduct discovery will not assist Dahlhauser, since the documents signed by the parties clearly refute the existence of a novation.

B. **Substantive and Procedural Unconscionability**

The Pennsylvania Supreme Court has held that:

a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision **and** the provision unreasonably favors the party asserting it . . . . The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively.

*Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 319 (Pa. 2007) (emphasis added). The party asserting unconscionability has the burden of proving both the lack of a meaningful choice and unreasonableness. *Salley*, 925 A.2d at 119-20. The fact that an agreement is an adhesion contract does not always render it unconscionable or unenforceable as a matter of law. *Id.* at 127; *see also, Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066-67 (Pa. Super. Ct. 1992).

Dahlhauser claims that the Blanket Personal Guaranty is procedurally unconscionable, because it is an adhesion contract. He also claims that it is substantively unconscionable, because it "seeks to hold Dahlhauser personally responsible for 'an unlimited amount' and 'irrespective of any circumstances which might constitute a legal or equitable discharge' of the Guaranty . . . ." (Def.'s Resp. at 11-12). He also notes that the Lease Agreement unreasonably favors De Lage, because it does not require De Lage to foreclose on and liquidate the equipment in the event of default, and it permits De Lage to seek compensation from him even though he is no longer affiliated with Cedar Lake Oncology. Furthermore, he claims that he was in a significantly weaker bargaining position, the Guaranty is in fine print, and

it was presented in a "take-it-or-leave-it fashion" on a pre-printed form. Dahlhauser argues that he should at least be given additional time to conduct discovery on these issues.

De Lage counters that Dahlhauser is a certified public accountant and a businessman with nearly twenty years of experience. (Def.'s Answer [35] and Cross-cl. at 5, ¶43). He is currently serving as the Chairman and CEO of Insight Genetics, Inc., a corporation that performs cancer research. Insight Genetics, Inc., http://insightgeneticsinc.com/managementteam.html (last visited Oct. 5, 2011). De Lage also notes that the discovery deadline in this case has passed, and Dahlhauser made the strategic decision not to conduct discovery prior to that deadline.

The Court finds that Dahlhauser is a businessman with a significant amount of experience and education, and there is no indication that he did not understand the obligations that he undertook when signing the Blanket Personal Guaranty. Dahlhauser does not claim that he attempted to negotiate or change any of the terms in the Blanket Personal Guaranty. He also has not alleged that it would have been impossible to lease the equipment from another company. Furthermore, he does not even allege that he ever spoke with any representative of De Lage about the Guaranty, and he has not clarified whether representatives from De Lage or Cedar Lake Oncology presented the Guaranty to him in a "take-it-or-leave-it fashion."

The fact that Dahlhauser did not sufficiently protect himself from liability under the Guaranty when he sold his interest in Cedar Lake Oncology is not the fault of De Lage, and it is not unreasonable of De Lage to seek enforcement of the Guaranty

agreement. In addition, the terms of the Lease Agreement that permit, but do not require, De Lage to take possession of the equipment and liquidate it are not unreasonable, since the equipment is extremely large and has been incorporated into the infrastructure of a medical facility that treats cancer patients. (Ex. A to Cedar Lake's Mem. [17] in Opp'n to Mot. for Writ of Replevin at 3). The Court finds that Dahlhauser has not demonstrated that he lacked a meaningful choice in signing the Guaranty, and he also has not demonstrated that the terms of the Guaranty unreasonably favor De Lage. As a result, the Blanket Personal Guaranty signed by Dahlhauser is not unconscionable. Finally, additional time to conduct discovery would not assist Dahlhauser in demonstrating that it is unconscionable, particularly since much of the information regarding the signing of the Blanket Personal Guaranty is already in the possession of Dahlhauser.

**C. Sufficiency of Proof Concerning Damages**

Dahlhauser asserts that the amount of damages suffered by De Lage is speculative, since the Court has authorized the repossession of the equipment and other parties have recently made payments to De Lage under the Lease Agreement. He argues that De Lage will potentially receive damages that exceed the debt.

However, pursuant to the Blanket Personal Guaranty, Dahlhauser and the other guarantors are jointly and severally liable for the unpaid balance of the Lease Agreements. (Ex. 5 to Pl.'s Mot. at 1). In addition, Dahlhauser admits that De Lage is not required to take possession of the equipment prior to seeking the balance from him. De Lage has presented evidence to the Court that the unpaid balance is $3,004,

271.51. Therefore, the Court finds that Dahlhauser and the other Guarantors are jointly and severally liable to De Lage for the debt of $3,004, 271.51, plus eighteen percent interest from the November 24, 2010 date of default.

## Conclusion

The Court finds that the Blanket Personal Guaranty signed by Dahlhauser is enforceable as a matter of law. Furthermore, there is no genuine issue of material fact that Dahlhauser owes De Lage $3,004, 271.51, plus eighteen percent interest from the November 24, 2010 date of default pursuant to the Guaranty. Any payments that have been or will be made by other parties will reduce the amount owed by Dahlhauser, since the Guaranty provides that he and the other Guarantors are jointly and severally liable for the amounts due under the Lease Agreement and Blanket Personal Guaranty agreements.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [42] filed by De Lage Landen Financial Services, Inc., is **GRANTED**. De Lage is entitled to a judgment against Eric Dahlhauser in the amount of $3,004, 271.51, plus eighteen percent interest from the November 24, 2010 date of default.

**SO ORDERED AND ADJUDGED** this the 6th day of October, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE